GEORGE C. PRATT, Circuit Judge:
 

 This is an appeal from a judgment of the United States District Court for the District of Connecticut, T. Emmet Clarie,
 
 Judge,
 
 affirming a judgment of the bankruptcy court holding a $100,000 obligation of defendant Turgeon (hereinafter “the husband”) to his former wife plaintiff Fors-dick (hereinafter “the wife”), to be nondis-chargeable under 11 U.S.C. § 523(a)(5) (1979). The factual determinations of the bankruptcy court are not clearly erroneous, and they support the lower courts’ legal conclusions; consequently, we affirm.
 

 BACKGROUND
 

 After 23 years of marriage, the parties in 1981 were divorced in Connecticut Superior Court, where the referee made certain awards to the wife, including $100,000 which he termed “non-modifiable alimony”, and $40,000, which was not specifically classified. The $100,000 was to be paid in monthly installments over a seven year period, with the amount of the installments decreasing each year. The $40,000 was to be paid within six months of the decree. These awards were upheld by the Connecticut Supreme Court.
 
 Turgeon v. Turgeon,
 
 190 Conn. 269, 460 A.2d 1260 (1983).
 

 About three years later the husband filed a voluntary Chapter 7 bankruptcy petition. Among his liabilities he listed $127,350 owed to the wife, which was the total still owed on the two divorce awards. The wife objected to discharge of this debt on the
 
 *802
 
 ground that it was nondischargeable alimony or support within the meaning of § 523(a)(5). On March 21, 1985, the bankruptcy court held that the $100,000 award was nondischargeable alimony, but that the $40,000 was dischargeable as a property settlement. The wife did not appeal from the discharge of the balance due on the $40,000 obligation. On the husband’s ap: peal from the holding that the $100,000 obligation was nondischargeable, the district court affirmed and this appeal followed.
 

 DISCUSSION
 

 The husband raises essentially two contentions. The first challenges the decision of the bankruptcy court that the $100,000 was “in the nature of alimony, maintenance, or support”. We apply the “clearly erroneous” standard to review such a factual finding of the bankruptcy court.
 
 In re Gibraltar Amusements, Ltd.,
 
 291 F.2d 22, 24 (2d Cir.1961). The second argues that even if the $100,000 was in the nature of alimony at the time of the divorce decree, the bankruptcy court should have considered the changed circumstances, particularly in the financial status of the parties, in determining whether to treat the obligation as dischargeable.
 

 A.
 
 The Nature of the $100,000 Award.
 

 The general purpose of the bankruptcy code is “to provide the bankrupt with comprehensive, much needed relief from the burden of his indebtedness by releasing him from virtually all his debts.”
 
 Murphy & Robinson Investment Co. v. Cross (In re Cross),
 
 666 F.2d 873, 879 (5th Cir.1982). While the code therefore reflects a strong public policy of providing debtors with fresh starts, congress has also determined that certain competing public policy interests shall take precedence. These competing concerns are reflected in the exceptions that congress has enacted to the general rule that debts are dischargea-ble in bankruptcy. At issue in this case is the exception contained in § 523(a)(5), which provides that a discharge under the code does not discharge an individual debt- or from any debt
 

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that — * * *
 

 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is
 
 actually in the nature of alimony, maintenance, or support
 
 * * *.
 

 11 U.S.C. § 523(a)(5) (emphasis added).
 

 By virtue of § 523(a)(5), congress has chosen between two competing interests— those of bankrupts and those of their former spouses and offspring — and it chose in favor of the latter. It is not for us on this appeal to reconsider that choice; rather, we need only determine whether the bankruptcy court was clearly erroneous in holding that the $100,000 obligation owed by the husband to the wife was “actually in the nature of alimony”.
 
 In re Williams,
 
 703 F.2d 1055,1057 (8th Cir.1983);
 
 See Boyle v. Donovan,
 
 724 F.2d 681, 683 (8th Cir.1984). If it is, congress has left no doubt that the debt is nondischargeable under § 523(a)(5).
 

 There is ample support in the record for the bankruptcy court’s conclusion. While the husband argues cogently that at the time of the state court referee’s award the concept of “rehabilitative alimony” was not recognized under Connecticut law, it is nevertheless possible that the award was in fact alimony, although of a different kind.
 

 First, we note that the state court referee characterized the award as “non-modifiable alimony”. Although it is true that “[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law”, H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 364 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 6320, it is also true that “Congress could not have intended that federal courts were to formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well-established laws
 
 *803
 
 of the States.”
 
 Pauley v. Spong (In re Spong),
 
 661 F.2d 6, 9 (2d Cir.1981). Thus, while the characterization of the award by the referee is not determinative of the question, it is strongly indicative that the $100,000 was intended as, and constituted, alimony.
 

 Second, the findings of the referee are consistent with his characterization of the award as alimony. Although he found that the wife possessed marketable skills and that “she should [be able to] obtain employment in which she is fitted”,
 
 Turgeon v. Turgeon,
 
 Memorandum of Decision, No. 24-11-75 (Conn.Super.Ct. February 18, 1981), it is more than plausible that, as the bankruptcy court found, she “was not
 
 immediately
 
 employable”,
 
 Forsdick v. Turgeon (In re Turgeon),
 
 Memorandum of Decision, No. 2-84-00025, Adversary Proceeding No. 2-84-0159 (Bankr.Conn. March 21, 1985) (emphasis added). Time-limited alimony, as the $100,000 was, would be an appropriate award for a spouse with a fair expectation of eventual employment but with a temporary need for support until such expectations can be met.
 

 Here, the wife had not been gainfully employed for most of the years of her marriage and it is reasonable to conclude that her ability to support herself would increase after a period of assimilation and adjustment. These are factors plainly contemplated by Connecticut General Statutes § 46b-82, the provision allowing for time-limited alimony. Thus, even if the referee’s award could not have been “rehabilitative alimony” under Connecticut law in effect at the time of the decision,
 
 see Grinold v. Grinold,
 
 172 Conn. 192, 374 A.2d 172 (1976), it nevertheless could have qualified as time-limited alimony, which was recognized under Connecticut law. Since the referee labeled the award as “alimony”, and since the underlying facts support that characterization, the conclusion of the bankruptcy court is supported by the record and cannot be overturned as clearly erroneous.
 

 Finally, we cannot overlook the fact that on the state court appeal from the referee’s award of “non-modifiable alimony”, the Connecticut Supreme Court affirmed.
 
 Turgeon v. Turgeon, supra.
 

 B.
 
 The Relevance of “Changed Circumstances”.
 

 As a secondary position the husband argues that even if the $100,000 award was in the nature of alimony and hence was nondischargeable under § 523(a)(5), the bankruptcy court should have taken notice of the alleged “changed circumstances” of the parties and held that because the wife apparently no longer requires the support granted to her by the state court decision, the obligation is dis-chargeable despite the language of § 523(a)(5). For support the husband cites
 
 Long v. Calhoun (In re Calhoun),
 
 715 F.2d 1103 (6th Cir.1983), in which the sixth circuit held that the bankruptcy court “must ... inquire whether [an obligation intended as alimony or support] has the
 
 effect
 
 of providing the support
 
 necessary
 
 to ensure that the daily needs of the former spouse and any children of the marriage are satisfied.... If the [obligation] is not found necessary to provide such support, the inquiry ends and the debtor’s obligation ... must be discharged.” 715 F.2d at 1109;
 
 see also id.
 
 at 1110 n. 11. The court acknowledged that its decision meant that bankruptcy courts would, in effect, be modifying the judgments and decrees of state courts.
 
 Id.
 
 at 1109-10 n.10.
 
 Calhoun
 
 is therefore strongly supportive of the husband’s contention that the bankruptcy court should consider any changes in the financial situation of the wife (but not in that of the husband;
 
 see Yeates v. Yeates (In re Yeates),
 
 44 B.R. 575, 580 (D. Utah 1984)) in evaluating the nature of the $100,000 award. However,
 
 Calhoun
 
 is an example of a minority view on this question, as the husband concedes, and we find the majority view to be far more persuasive. We therefore reject the reasoning of the sixth circuit and of those other courts that have adopted its stance.
 
 See, e.g., Warner v. Warner (In re Warner),
 
 5 B.R. 434, 442-43 (Bankr.D.Utah 1980).
 

 An inquiry of the sort urged by the husband would put federal courts in the position of modifying the matrimonial decrees
 
 *804
 
 of state courts, thus interfering with the delicate state systems for dealing with the dissolution of marriages and the difficult and complex results that flow therefrom.
 
 See Harrell v. Sharp (In re Harrell),
 
 754 F.2d 902, 907 (11th Cir.1985). State-crafted family law mechanisms should not be disturbed by federal court intervention unless there is an unmistakable mandate from congress to do so in order to achieve a valid federal objective.
 

 We find no such mandate here. To the contrary, congress has clearly required the bankruptcy court to protect the rights of a former spouse receiving alimony at the expense of a debtor seeking a fresh start. The husband’s argument would turn this legislative intent on its head by having the bankruptcy court entertain arguments about, and deciding issues of dischargeability on the basis of, a continuing need for support instead of protecting the award previously found by the state courts to be appropriate.
 

 Had congress wished the bankruptcy court to consider the current impact of its decision on the parties in determining whether an alimony debt is dischargeable, it could easily have so provided. Indeed, for educational loan obligations congress did exactly that in § 523(a)(8) which treats student loans as nondischargeable
 
 unless
 
 “excepting such debt from discharge ... will impose an undue hardship on the debt- or and the debtor’s dependents”. When read alongside § 523(a)(8), the alimony exception in § 523(a)(5) can be interpreted only as an absolute exception to discharge.
 
 See Benz v. Nelson (In re Nelson),
 
 20 B.R. 1008, 1011 n. 3 (M.D.Tenn.1982).
 

 There is no support in the language of § 523(a)(5) for the husband’s position. As the eleventh circuit noted in
 
 Harrell,
 
 754 F.2d at 906, “[t]he language does not suggest a precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change.” To be exempt from discharge an award of alimony or support does not have to conform exactly to some level that a bankruptcy judge might deem necessary for maintenance of a former spouse or children; it merely has to be “in the nature of” alimony or support. In short, there is no warrant for a federal bankruptcy court to evaluate the state court’s alimony award against the needs of the former spouse to whom it was granted.
 
 See Boyle,
 
 724 F.2d at 683 (bankruptcy court should not “examine the present situation of the parties”).
 

 As a more moderate, alternative contention the husband suggests that the federal court should look to changed conditions where modification of the award at issue would be unavailable in state court, as he argues is the case here. It is true that some courts that have’ declined to examine changed circumstances have pointed to the availability of a state modification procedure as one factor in their decision.
 
 See, e.g., Harrell,
 
 754 F.2d at 907 n. 8. None, however, has found that particular consideration to be decisive, and we question even its relevance, because the decision not to make modification available to the obligated spouse reflects a state-made policy decision in the area of domestic relations, an area into which we are loath to intrude.
 
 Cf. Simms v. Simms,
 
 175 U.S. 162, 167, 20 S.Ct. 58, 60, 44 L.Ed. 115 (1899) (“[T]he whole subject of the domestic relations of husband and wife ... belongs to the laws of the state”).
 

 Thus, in denying dischargeability to the $100,000 alimony award, the bankruptcy court did not err when it declined to consider the alleged changed circumstances of the parties.
 

 CONCLUSION
 

 The determination of the bankruptcy court that the husband’s debt to his former wife was “actually in the nature of alimony” is supported by the record and is not clearly erroneous. Since such an obligation is nondischargeable under § 523(a)(5) of the bankruptcy code, the current needs of the wife notwithstanding, the husband was not entitled to discharge of the balance due on the $100,000 alimony award.
 

 The judgment of the district court is affirmed.