**James W. FRASER, Plaintiff,**

v.

**Gail S. FRASER, Defendant.**

**No. 4:95–CV–0251.**

United States District Court,
E.D. Texas,
Sherman Division.

April 8, 1996.

---

**32.** *In re Bowman,* 181 B.R. 836 (Bankr.D.Md. 1995).

**33.** *Id.*

Stacy L. Weiske, Holly A. Schymik, Hughes & Luce, Dallas, TX, for James W. Fraser.

Jack A. Moffitt, Jr., Dallas, TX, for Gail S. Fraser.

## MEMORANDUM OPINION

COBB, District Judge.

On December 31, 1992, a Memorandum of Decision ("Divorce Decree") was entered by

the Superior Court of the Stamford/Norwalk Judicial District at Stamford, Connecticut, granting a no-fault divorce to James Fraser and Gail Fraser. The Appellant, James Fraser filed a petition under Chapter 7 of the Bankruptcy Code and a discharge order was entered in that proceeding on August 19, 1993. On May 31, 1994, the Appellee, Gail Fraser, filed an Application for Order to Show Cause and a Motion for Contempt in the Divorce Proceeding seeking to hold the Appellant in contempt for failing to make payments on the court-ordered indemnity obligation. On July 20, 1994, the Appellant filed a Complaint to enforce the provisions of the discharge order seeking declaration that a pre-bankruptcy indemnity obligation [1] he owed to Appellee Gail Fraser is a dischargeable debt under 11 U.S.C. § 523(a)(5). The Bankruptcy Court, through Chief Judge Abel, found that the indemnity obligation was not a dischargeable debt under the Bankruptcy Code as the obligation was actually in the nature of alimony, maintenance, or support. Appellant seeks reversal of the decision of the Bankruptcy Court in this matter.

This Court agrees with the holding of the Bankruptcy Court that the Indemnity Obligation is actually in the nature of alimony, maintenance or support under the provisions of 11 U.S.C. § 523.

## BACKGROUND

Gail and James Fraser were married on July 23, 1966 and during the course of their marriage they had two children. At the time of the divorce, James Fraser was 52 and Gail Fraser was 48. Both parties are college graduates. Mr. Fraser graduated from Notre Dame in 1963 with a degree in Chemistry and received an MBA from the University of Connecticut in 1970. Gail Fraser is a graduate of Boston University. She received a Masters in Reading from the University of Bridgeport in 1970 and in approximately 1980, she received a sixth year degree. She is now working on her Doctoral Dissertation while tutoring students in the evenings. The

divorce court found that Mr. Fraser had an earning capacity of $72,000 per year.

In the Divorce Decree, the Connecticut state court ordered that the Appellant pay Gail Fraser one-third of his gross income up to $72,000 per year as alimony. (Divorce Decree at 4–5.) The State Court suspended this obligation for such time as the Appellant continued to be unemployed, except that he was made to pay $1.00 during this period of unemployment. (Divorce Decree at 4–5.) The State Court also found that James Fraser was personally obligated to the Estate of Elbert T. Little, Jr. over which Gail Fraser is executrix. Mr. Fraser borrowed approximately $100,000 from that estate without Gail Fraser's consent. (Tr. at 43–44.) At this time, the principal amount has been repaid and the debt that remains is interest on the "loan." The State Court required that Mr. Fraser repay to the Appellee any monies which she had or would pay on the Little Estate debt. The text of this "Indemnity Obligation" reads as follows:

In the event the wife made or makes any payments as of January 1, 1992, to the Estate on behalf of the husband's obligation, those payments shall be a debt payable form (sic) the husband to the wife.

The husband shall be obligated to pay to the wife any and all monies she pays to the Estate of Elbert T. Little, Jr., and that this obligation of the husband shall be deemed a further alimony obligation of the husband, non-dischargeable in bankruptcy and that the wife retains the right to obtain an order from the Superior Court for the payment of said monies from the husband to her. Said alimony payments made pursuant to this paragraph shall be non-taxable to the wife and non-deductible to the husband.

(Divorce Decree at 6–7.)

On June 13, 1995, the Bankruptcy Court held a trial on the issues raised in the Appellant's Complaint. The Bankruptcy Court held that the State Court intended that the Indemnity Obligation be deemed alimony. In reaching this holding, the Bankruptcy

---

**1.** This indemnity obligation was imposed by the state court during the divorce proceedings. The basis of the obligation was the repayment of a loan taken from the Estate of Elbert Little. Gail Fraser is the Estate's executrix and the loan was taken by Mr. Fraser without her permission.

Court stated that the factors to be considered in making this determination were: "disparity in earning power of the parties, relative business opportunity, the physical condition of the parties, their probable future need for support, the educational background of the parties, the benefits they'd received had the marriage continued." (Tr. at 81.) The court went on to find that "[h]ere the wife was in the process of obtaining a higher education that never happened, a housewife with two children, the husband making, for several of the years applicable, five hundred thousand a year, living in a house [$]2.2 million [sic], her age forty-eight, his age fifty-two." (Tr. at 81–82.) The court concluded that the Indemnity Obligation was in the nature of alimony and that "the divorce court already divided the property equally without consideration of the debt, of his debt, which at the time was approximately [$]86,000 due and owing to the trust." (Tr. at 82.) The Bankruptcy Court denied the Appellant relief and the Appellant promptly appealed that decision.

## ANALYSIS

### Standard of Review, Burden of Proof, and Presumptions

■ The Bankruptcy Court's determination of whether the Indemnity Obligation is "actually in the nature of alimony, maintenance or support" under § 523(a)(5) of the Bankruptcy Code and, therefore, nondischargeable is a factual finding which is reviewed under the clearly erroneous standard of Rule 52 of the Federal Rules of Civil Procedure and Rule 8013 of the Bankruptcy Rules. *E.g., Benich v. Benich (In re Benich),* 811 F.2d 943, 946 (5th Cir.1987). A Bankruptcy Court's findings of fact are "clearly erroneous" if they are not supported by substantial evidence, are contrary to the clear preponderance of the evidence, or are based on an erroneous view of the law. *E.g., In re Panama–Williams Corp.,* 235 F.Supp. 729, 732 (S.D.Tex.1964); *In re Basic G. Indus.,* 173 F.Supp. 903, 904 (S.D.Tex.1959).

■ An ex-spouse creditor objecting to the dischargeability of a debt [here the former Mrs. Fraser] bears the burden of proof, and must establish by a fair preponderance of the evidence that a debt is actually in the nature of alimony, maintenance or support. *In re Benich,* 811 F.2d at 945; *Davidson v. Davidson (In re Davidson),* 104 B.R. 788, 797 (Bankr.N.D.Tex.1989), *aff'd,* 133 B.R. 795 (N.D.Tex.1990, *rev'd on other grounds,* 947 F.2d 1294 (5th Cir.1991); *Roberts v. Poole,* 80 B.R. 81, 85 (Bankr.N.D.Tex.1987). The fair preponderance of the evidence means the greater weight of convincing evidence. *E.g., In re Wightman,* 36 B.R. 246, 250 (Bankr. N.D.Tex.1984).

■ In addition, exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor so that Congress' intent of giving to a debtor a "fresh start" is not thwarted. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Murphy & Robinson Inv. Co. v. Cross (In re Cross),* 666 F.2d 873, 880 (5th Cir.1982). When the question is a close one, courts generally determine that the debt is dischargeable. *See, e.g., In re Smith,* 436 F.Supp. 469, 480 (N.D.Ga.1977).

### A Multifactored Intent Analysis

■ In determining whether Mr. Fraser's obligation to his former wife is dischargeable in bankruptcy, the Court must first look to the applicable statute under the Bankruptcy Code. Section 523(a)(5) of the Bankruptcy Code provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that ...

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. ...

11 U.S.C. § 523(a)(5)(B). Obligations that are actually in the nature of alimony, maintenance, or support, as provided under subsection (B) above, are not obligations that may be discharged in bankruptcy. *In re Harrell*, 754 F.2d 902 (11th Cir.1985); *Forsdick v. Turgeon*, 812 F.2d 801 (2d Cir.1987).

■ The determination of whether a debt is nondischargeable under this provision is a matter of federal bankruptcy law, not state law. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991); *In re Joseph*, 16 F.3d 86, 87 (5th Cir.1994); *In re Biggs*, 907 F.2d 503, 504 (5th Cir.1990); *see also, Brown v. Felsen*, 442 U.S. 127, 136, 99 S.Ct. 2205, 2211, 60 L.Ed.2d 767 (1979) (stating that "[b]y the express terms of the Constitution, bankruptcy law is federal law").

■ It is not uncommon for state courts to enter separation agreements which place the moniker of alimony upon that which is not genuinely so. Federal courts must look beyond the label of alimony provided by state courts (or by the parties themselves) to determine the true nature of the debt. *In re Davidson*, 947 F.2d 1294, 1296 (5th Cir.1991); *In re Benich*, 811 F.2d 943, 945 (5th Cir. 1987); *In re Nunnally*, 506 F.2d 1024, 1027 (5th Cir.1975). The reason for this principle is that parties and state courts do not necessarily label obligations with federal bankruptcy standards in mind. "Even if a state court reviews an issue which is similar to one created by the nondischargeability provision in the bankruptcy code, the state-law concept will likely differ from the specific federal bankruptcy doctrine in question." *In re Dennis*, 25 F.3d 274, 278 (5th Cir.1994) (citing *Brown v. Felsen* 442 U.S. 127, 135, 99 S.Ct. 2205, 2211, 60 L.Ed.2d 767 (1979)).

■ In looking beyond the label placed on the debt by the state court proceeding, the Bankruptcy Court must attempt to ascertain the true nature of the debt. *In re Davidson*, 947 F.2d 1294, 1296–97 (5th Cir.1991). In

doing so, the intention of the parties (or the court if there is no separation agreement) is the ultimate subject of the inquiry. *In re Benich*, 811 F.2d at 945. In attempting to arrive at the intent of the parties, the courts have considered a number of different factors to be considered in connection with domestic agreements or judgments. *See e.g., In re Nelson*, 16 B.R. 658, 660–61 (Bankr. M.D.Tenn.1981), *rev'd in part on other grounds*, 20 B.R. 1008 (1982) (identifying eleven factors); in *In re Coffman*, 52 B.R. 667, 674–75 (Bankr.D.Md.1985) (identifying eighteen factors). "These lists of factors, however, should not be used as a checklist of considerations that need to be proven or even considered in every case." *In re Jackson*, 102 B.R. 524, 531 (Bankr.M.D.La.1989). The Fifth Circuit has explained that such considerations "are not legal criteria, ... but relevant evidentiary factors that assist the bankruptcy court as trier of fact in determining the true nature of the debt created by the agreement." *In re Jackson*, 102 B.R. at 531 (citing *In re Benich*, 811 F.2d at 945). "Thus, the factors described in such lists should not lead the Court to undertake mathematical calculations as to the percentage of factors present in a given factual situation, but should serve as a non-exhaustive list of considerations that, if present, help divine the intent of the parties." [2] *In re Jackson*, 102 B.R. at 531.

In the case at bar, the Appellant focuses on four factors it finds to be dispositive of the alimony label inquiry. The Appellant makes a reasoned case that when considering these criteria, the Court should conclude that the true nature of the Indemnity Obligation is not alimony. However, the Bankruptcy Court below considered several other factors, including ones highlighted by this Circuit's jurisprudence. *See, In re Joseph*, 16 F.3d 86, 87–88; *In re Nunnally*, 506 F.2d 1024, 1027 (5th Cir.1975). In addition, Judge Abel indicated that "[b]ased upon the totality of the

---

**2.** While such multifactor tests help to illuminate relevant considerations, this Court declines to adopt the proposition that it is bound to apply any particular factor test (as a sort of checklist) to the issues raised in this proceeding. The Appellant would have this Court focus on only four of the thirteen factors enumerated in its

brief. While the four selected factors predictably warrant an outcome for the Appellant, this Court is not so persuaded that these are the only four factors which need be considered. The learned Judge Abel was also unpersuaded as he relied on at least six other factors.

relevant and pertinent facts, the debt is in the nature of alimony and thus nondischargeable...." (Tr. at 81.) The transcript of the proceedings in the Bankruptcy Court reveal that the arguments presented to this Court differ little from those presented to the Bankruptcy Court. Judge Abel was not persuaded that it was the intent of the parties that the debt is actually a property settlement provision. Based on the relevant case law, not only does this Court fail to find the Bankruptcy Court's view of the law to be clearly erroneous, but this Court agrees with the decision of the Bankruptcy Court.

In addition, there is nothing about the four factors Appellants rely upon that would mandate the conclusion that the debt is not alimony. The Appellants first two factors concern that the context of the provision and the inclusion of a separate support provision in the Divorce Decree. The provision of a separate alimony section in the Divorce Decree, while curious at first blush, does not require the conclusion that the additional section was ever intended by the parties (or the state court) to be a property settlement provision. This Court knows of no rule of Divorce Decree construction which would make one alimony provision mutually exclusive of another (even if they are included under different headings in a decree). Because the Little Estate debt is dealt with under a different heading, the fact that the Connecticut court took great strides to label the indemnity as alimony in fact speaks directly to the Court's intent. The third factor Appellants rely upon is the absence of a termination clause which would end the Appellant's obligation upon death or remarriage of the Appellee. It is quite reasonable to assume that calling the Indemnity Obligation "further alimony" (Divorce Decree at 6) rendered the recitation of another termination provision superfluous. Again, it is difficult to believe that the use of headings would sever any connection between similar items in the Decree. Curiously, the Appellant would have this Court disregard the carefully crafted label of alimony while simultaneously requiring strict application of certain of the Decree's topic headings.

Finally, the Appellant points to the tax treatment of the Indemnity Obligation as declared by the state court. The tax treatment provision seems quite consistent with the general notion of alimony. Since Gail Fraser would essentially be fronting the money on Mr. Fraser's debt obligation, any monies received through indemnification would not actually increase her income. In fact, Mrs. Fraser would be receiving less income as a result of higher taxes (on the same net income) while Mr. Fraser would be allowed to decrease his tax burden by taking a deduction (for basically paying off a loan). The intent of the court was clearly to keep Gail Fraser's level of alimony income at the $24,000 income level. This provision keeps Mrs. Fraser at that level of alimony and makes the transaction a zero sum game.

Even using the carefully selected criteria proposed by the Appellant, a formulaic application would not necessarily warrant a favorable outcome for the Appellant. The Bankruptcy Court, in its discretion, used the variables it found most relevant and its view of the law was nowhere near being clearly erroneous.

### Actual Effects and Reasonableness of the Obligation

The Appellant makes two additional arguments, both of which are based on the Sixth Circuit's decision in *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983). The Appellant would have this Court adopt the methodology used in *Calhoun* which requires the Court to consider whether:

> (1) the intent of the state court or the parties was to create a support obligation; (2) whether the support provision has the actual effect of providing necessary support; (3) the amount of support is so excessive as to be unreasonable under traditional concepts of support; and finally, (4) if the amount of support is unreasonable, how much of it should be characterized as nondischargeable for purposes of federal bankruptcy law.

*In re Sullivan,* 62 B.R. 465, 470 (Bankr. N.D.Miss.1986).

The Appellant claims that parts two and three are applicable to the present case. That is, that while the state court may have intended to create a support obligation

through its use of a label, the actual effect of the obligation does not provide necessary support by ensuring that the obligee's daily needs are met. *In re Calhoun,* 715 F.2d at 1109. The Appellant further asks this Court to consider whether the amount of the award is so excessive as to be unreasonable.

With respect to the actual effect of the support obligation, this Court, like the Third Circuit in *Gianakas,* adopts a functional analysis of intent. *In re Gianakas,* 917 F.2d 759 (3rd Cir.1990). This analysis would equate intent with the design, function, or purpose of the obligation. The difference in the two methods stems from the fact that *Calhoun* requires proof both of intent and effect. *Calhoun* therefore seems to equate intent with the label applied to the obligation by the court rather than the design, function, or purpose of the debt. Under this approach, the intent inquiry previously discussed guides the intent inquiry.

As alluded to before, the Indemnification Obligation was necessary to keep Gail Fraser at a constant level of income—a level which the state court had deemed necessary for her daily needs, based on all the relevant information it had before it. To allow the obligation to be discharged would clearly undermine the state court's design, function, or purpose of the obligation. Whether and when she paid any monies to the Little Estate was a decision made by Gail Fraser, based on her financial circumstances at the time. It is not necessary for Ms. Fraser to show that without indemnity by her former husband, she would not be able to maintain daily necessities. Based on the Divorce Decree, it is reasonable to assume that she made the payments with indemnification in mind. Had there been no such requirement, there may have been no payments to the Little Estate which would put her at risk of not meeting her daily obligations.

With respect to the third step in the *Calhoun* analysis, a substantial and conflicting line of authority demonstrates the trend toward prohibiting bankruptcy courts from reviewing and relitigating state law determinations of the "reasonableness" of support and alimony awards. Indeed, since the *Calhoun* decision from the Sixth Circuit, at least five

other Circuit Courts of Appeal and many bankruptcy and district courts have taken a contrary view. *See, In re Gianakas,* 917 F.2d 759 (3rd Cir.1990); *Sylvester v. Sylvester,* 865 F.2d 1164 (10th Cir.1989); *Forsdick v. Turgeon,* 812 F.2d 801 (2nd Cir.1987); *Draper v. Draper,* 790 F.2d 52 (8th Cir.1986); *In re Harrell,* 754 F.2d 902 (11th Cir.1985); *In re Chedrick,* 98 B.R. 731 (W.D.Pa.1989); *In re Smith,* 97 B.R. 326 (Bankr.N.D.Tex. 1989). These cases now clearly constitute the majority view, and this Court finds the rationale of these cases to be persuasive.

The Second Circuit explained the rationale this Court now adopts:

Calhoun is an example of a minority view on this question, as the husband concedes, and we find the majority view to be far more persuasive. We therefore reject the reasoning of the Sixth Circuit and of those other courts that have adopted its stance. *See, e.g., Warner v. Warner (In re Warner),* 5 B.R. 434, 442–43 (Bankr.D.Utah 1980). An inquiry of the sort urged by the husband would put federal courts in the position of modifying the matrimonial decrees of state courts, thus interfering with the delicate state systems for dealing with the dissolution of marriages and the difficult and complex results that flow therefrom. *See, Harrell v. Sharp (In re Harrell),* 754 F.2d 902, 907 (11th Cir.1985). State-crafted family law mechanisms should not be disturbed by federal court intervention unless there is an unmistakable mandate from Congress to do so in order to achieve a valid federal objective. We find no such mandate here. To the contrary, Congress has clearly required the bankruptcy court to protect the rights of a former spouse receiving alimony at the expense of a debtor seeking a fresh start. The husband's argument would turn this legislative intent on its head by having the bankruptcy court entertain arguments about, and deciding issues of dischargeability on the basis of, a continuing need for support instead of protecting the award previously found by the state courts to be appropriate.

*Forsdick v. Turgeon,* 812 F.2d at 803–04.

■ There is substantial evidence that the intent of the state court in drafting the In-

demnity Obligation was to provide support necessary to ensure that the Appellee's periodic needs were met. In addition, this Court does not make a determination that the obligation was manifestly unreasonable as the inquiry would be improper.

For the reasons stated above, this Court is of the opinion and so finds that the Indemnity Obligation sought to be discharged by the Appellant is in the nature of alimony, maintenance or support within the meaning of 11 U.S.C. § 523(a)(5), and is not dischargeable under the Bankruptcy Code. The Appeal is denied.