**In re Bernard J. PETERS, Debtor.**

**Bernard J. PETERS, Appellant,**

**v.**

**James A. HENNENHOEFFER, Appellee.**

**No. 91 Civ. 2583 (GLG).**

United States District Court,
S.D. New York.

Nov. 15, 1991.

---

Bernard J. Peters, pro se.

Fink Weinberger P.C. (by Richard L. Koral, Joseph L. Fox, of counsel), White Plains, N.Y., for appellee.

## OPINION

GOETTEL, District Judge:

The issue raised by this appeal is whether the fees which a state court has directed the debtor to pay to the attorney appointed by the court to represent the debtor's son during a custody dispute are a nondischargeable debt within the meaning of 11 U.S.C. § 523(a)(5).

## BACKGROUND

Bernard Peters and his wife were legally separated in Virginia in 1982. They had one son, Brendan. The court decree ordered Peters to pay $450 per month for Brendan's support. Thereafter, Mrs. Peters moved to California with her son and initiated child custody proceedings which almost immediately turned acrimonious. *See In re Brendan P.*, 184 Cal.App.3d 910, 230 Cal.Rptr. 720, 721 (1986) (setting forth relevant background to this appeal). In March 1983, James Hennenhoeffer, an attorney, was appointed by the Superior

Court to represent the interests of Brendan. In October 1983, after a nine day hearing, joint legal custody was ordered and Mr. Peters was allowed two days per week for visitation.

The record indicates that the parents did not cooperate: Mrs. Peters impeded visitation and Peters would attempt, in apparently unacceptable ways, to have it. In April 1984, a new visitation order was issued.[1] On May 9, 1984, in light of the fact that Peters was investing so much time in pursuing his visitation rights, the court reduced his child support obligations to zero. That same day, the court ordered Peters to pay Hennenhoeffer $6,372.75 as "additional child support." During the following years, there were apparently many hearings during which the fees owed to Hennenhoeffer rapidly accrued. Though it does not appear that any support order for Brendan's direct benefit was ever entered, the court would periodically assess Hennenhoeffer's fees against Peters and his wife, labelling them "additional child support."[2]

On May 19, 1988, the California court issued its final order awarding physical custody of Brendan to Peters with limited visitation granted to Mrs. Peters. The court at that time stated that it "lacks sufficient information to make an order regarding the support of the minor child, Brendan. The Court anticipates that each party will become employed on a full time basis by the review date set forth herein." *In re The Marriage of Peters*, No. N 21462, Statement of Decision (May 19, 1988), at 11. Review of the issue of Brendan's maintenance was set for June 13, 1988. The

court further stated that it "finds the attorney's fees and costs incurred on behalf of the minor child by James A. Hennenhoeffer, in addition to all prior orders of this Court, are in the sum of $46,817.44" and ordered each party to pay one-half of those costs as "additional child support" pursuant to California Civil Code § 4606. *Id.* at 12. The record does not indicate whether the scheduled support review ever took place.

In August 1988, while Mrs. Peters had Brendan for a visit, they both disappeared. They are still missing. Peters claims to have expended all of his resources in attempting to locate his son.

On September 11, 1990, Peters filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Hennenhoeffer commenced an adversary proceeding in December, seeking a decree that his claim was nondischargeable as child support pursuant to § 523(a)(5) of the Bankruptcy Code. After a trial on this matter on February 27, 1991, Judge Schwartzberg held that the debt owed to Hennenhoeffer was nondischargeable. This appeal followed.

## DISCUSSION

At the outset, we must address appellant's contention that he was deprived of due process in the bankruptcy proceedings because the lower court permitted Hennenhoeffer's attorney to submit a memorandum of law and exhibits after the hearing had begun on February 27, 1991 and that Peters did not therefore have an opportunity to read it or respond prior to the hearing. Peters contends that the memoran-

---

1. After that order, Mrs. Peters disappeared with her son. Several weeks later, she surrendered to the juvenile authorities and the custody arrangement was ordered to continue by the juvenile court although Mrs. Peters still continued to thwart the visitations. While the custody proceedings were pending in Superior Court, the California Juvenile Authorities filed a dependency petition in juvenile court, alleging that Brendan had no parent or guardian actually exercising and capable of exercising proper parental care and control. Brendan was removed to a foster home temporarily and then returned to his mother who continued to impede visitation. The intervention of the juvenile authorities resulted in a jurisdictional dispute arising be-

tween the juvenile court and the Superior Court in which the original child custody proceeding was filed. That matter was extensively litigated with jurisdiction over the issue of Brendan's custody being vested in the Superior Court by the California Court of Appeals. *In re Brendan P., supra.*

2. On October 29, 1985, Peters' child support obligation was reduced to zero until further order of the court. Twice in 1987, Hennenhoeffer asked for and was awarded attorneys' fees. There is no indication that those fees were labelled as additional child support.

dum of law was a responsive pleading because it was a response to his counterclaim.

This argument is premised upon Peters' misunderstanding of the bankruptcy procedural rules. His answer asserted no counterclaim and therefore no responsive pleading was permitted under the Bankruptcy Rules of Procedure. Thus, the memorandum could not have been a responsive pleading. Furthermore, a memorandum of law, though it may make reference to the answer, is not a responsive pleading by definition. In addition, during the trial of an adversary proceeding, there is no requirement that memoranda of law be submitted and there is not provision in the procedural rules for responses to trial memoranda. Thus, appellant's argument that he had been deprived of due process must fail because appellant was not entitled to make any response to the brief.

In addition, Peters was not prejudiced by the submission of the memorandum. The transcript of the hearing reveals that after Hennenhoeffer's attorney handed up a memorandum of law early in the hearing, the following colloquy ensued:

> Mr. Peters: Let the record reflect that again I just received this memorandum of law and I haven't had an opportunity to respond to it.
> The Court: Do you want to respond to it?
> Mr. Peters: Well, I would like to give my case first.
> The Court: All right.

Peters then referred the court to summary judgment papers he had submitted a month earlier which had not been calendared because of improper notice. In addition, he put into evidence transcripts of the California proceedings to support his contention that the fees owed to Hennenhoeffer were not in the nature of child support. He also made a legal argument which echoed the law and cases relied upon in his summary judgment papers. Although the bankruptcy court's decision issued the next day, it referenced arguments raised by Peters during the hearing and analyzed cases cited in his motion papers. Thus, it is clear that Peters was able to adequately present his case to the bankruptcy court. We must conclude therefore that appellant was not deprived of due process in the bankruptcy proceedings.

Appellant's other challenge to the decision of the bankruptcy court is more thorny. Peters contends that attorneys' fees owed to Hennenhoeffer were not child support and are therefore dischargeable under 11 U.S.C. § 727. He argues therefore that the bankruptcy court's conclusion that "[t]he above-mentioned obligation owed by the debtor to the plaintiff is nondischargeable as a debt in the nature of maintenance or support within the meaning of 11 U.S.C. § 523(a)(5)(B)", *In re Peters*, 124 B.R. 433, 436 (Bankr.S.D.N.Y.1991), is in error. On appeal, conclusions of law are reviewed *de novo*.[3] Fed.Rules Bankr.Rule 8013; *see Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395 (2d Cir.1987).

"The general purpose of the bankruptcy code is 'to provide the bankrupt with comprehensive, much needed relief from the burden of his indebtedness by releasing him from virtually all his debts.'" *Forsdick v. Turgeon*, 812 F.2d 801, 802 (2d Cir.1987) (quoting *Murphy & Robinson Investment Co. v. Cross*, 666 F.2d 873, 879 (5th Cir.1982)). However, the bankruptcy code also codifies a competing federal interest in ensuring that spouses and children have the financial support necessary to safeguard their welfare. Section 523(a)(5) of Title 11 provides that a discharge under the code does not discharge an individual debtor from any debt:

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record ... but not to the extent that—
> (B) such debt includes a liability designated as alimony, maintenance, or sup-

---

**3.** The issue discussed hereafter is a mixed question of fact and law. However, the facts are derived from California court records—what remains is the legal conclusion to be drawn from the undisputed facts.

port, unless such liability is actually in the nature of alimony, maintenance, or support ...

11 U.S.C. § 523(a)(5) (1988).

James Hennenhoeffer claims the $44,000 owed to him by debtor Peters is not dischargeable because various California Superior Court orders state that his fees, incurred in his representation of Brendan in the custody proceedings, were additional child support. Hennenhoeffer argues that as his fees are an award of child support in connection with a court order they may not be discharged.

■■■ It is important to note that § 523(a)(5) discharges a debt designated as support which is not actually in the nature of support. 11 U.S.C. § 523(a)(5)(B); *see Forsdick*, 812 F.2d at 802–803. "[D]ischargeability must be determined by the substance of the liability rather than its form." *In re Spong*, 661 F.2d 6, 9 (2d Cir.1981). Thus, the labelling of a debt as child support is not dispositive of the issue of whether a debt is dischargeable or not. *See In re Ridgway*, 108 B.R. 154, 156 (Bankr.N.D.Ohio 1989). What constitutes support is determined under the federal bankruptcy laws, not state law, although reference to the well-established laws of the state is prudent. *In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir.1983) (quoting S.Rep. No. 95–989, 95th Cong., 2d Sess., 79, reprinted in [1978] U.S.Code Cong. & Admin.News 5787, 5865). *See In re Spong*, 661 F.2d at 9. The code requires therefore that to determine dischargeability the court examine the actual nature of the obligation which has been designated as child support.

Courts are in general agreement that obligations in the nature of alimony, maintenance and support may include the duty to pay attorneys' fees incurred by the former spouse in connection with a divorce proceeding, the obtaining and enforcement of alimony and/or support awards, or for custody disputes. *See, e.g., id.* (debtor's undertaking to pay his wife's legal bill in connection with divorce proceeding falls within definition of alimony and support); *In re Wisniewski*, 109 B.R. 926, 930 (Bankr.E.D.Wis.1990) (spouse's need may

extend to an action for custody of minor children and these fees will be nondischargeable provided other factors indicating support are present); *In re Hicks*, 65 B.R. 227, 229 (Bankr.D.N.M.1986) (debt owed to former spouse as compensation for attorneys' fees and other costs incurred while she was attempting to regain custody of child is nondischargeable). It is also generally accepted that fees incurred on behalf of a child are nondischargeable because they are deemed to be support when those fees are inextricably intertwined with proceedings affecting the welfare of a child. *See In re Laney*, 53 B.R. 231 (Bankr.N.D. Texas 1985); *Matter of Coleman*, 37 B.R. 120 (Bankr.W.D.Wis.1984); *In re Morris*, 14 B.R. 217 (Bankr.D.Colo. 1981). *But see In re Lanza*, 100 B.R. 100 (Bankr.M.D.Fla.1989) (finding that fees owed to a guardian ad litem appointed to represent child in a custody dispute were dischargeable). *Compare In re Aughenbaugh*, 119 B.R. 861 (Bankr.M.D.Fla.1990) (attorneys' fees rendered in connection with litigation concerning child visitation rights and discovery disputes are not in the nature of support).

■■■ The "nature of support" is a broadly construed term in bankruptcy law. Unlike state child support laws which require merely that child support orders ensure adequate basic living expenses for the child, *see e.g.*, Cal.Civ.Code § 4723 (1984), federal bankruptcy courts addressing the term in the context of guardian ad litem fees have broadened the meaning of "support" pursuant to 11 U.S.C. § 523(a)(5)(B) to include any services inuring to the benefit of the child in a litigation connected with a matrimonial dispute. *See e.g., In re Laney*, 53 B.R. at 231. The reason for such a policy is clear. In any matrimonial action, whether it concerns the divorce, maintenance, support, custody, or post-decree proceedings implicating any of the foregoing, it is essential that each party be able to adequately represent its interests; accordingly, attorneys' fees owed to spouses are deemed to be in the nature of support. *See In re Spong*, 661 F.2d at 9; *In re Schwartz*, 53 B.R. 407, 411 (Bankr.

S.D.N.Y.1985). Similarly, as the appointment of a guardian ad litem is for the purpose of effectively representing a minor child's best interests in a matrimonial dispute, *see* Cal.Civ.Code § 4606, the fees owed to the guardian ad litem can be deemed to be in the nature of support.

Peters argues that this court is obligated to undertake a fact-specific inquiry to determine whether other factors indicating support were present. *See Forsdick*, 812 F.2d at 802–803; *In re Ridgway*, 108 B.R. at 156. To this end, he points out that the California court, while labelling the fees to Hennenhoeffer "additional child support" was concurrently declining to make specific awards for Brendan's daily maintenance, he then being in the custody of his mother.

As noted earlier, what constitutes support is determined under federal bankruptcy law. In general, the federal law is that attorneys' fees incurred by a guardian ad litem acting on behalf of a child during a custody dispute are "in the nature of support." The reasons for this view are clear. The support of a child does not just rest upon daily sustenance. The protection of the child's interests in court by the guardian ad litem constitutes a measure of support for the child whose value to the child cannot be diminished. Indeed, it is in the child's best interests to have custody matters fully and fairly litigated. Insuring this is done is part of the parents' duty to support the child. *In re Hicks*, 65 B.R. at 229.[4]

■ We must consider whether there are any facts here warranting an exception to this rule. Hennenhoeffer was appointed pursuant to Cal.Civ.Code § 4606 which states that "in any proceeding under this part where there is in issue the custody of a minor child, the court may, if it find that it would be in the best interests of the minor child, appoint private counsel to represent the interests of the minor child." He was appointed presumably because the

California court determined that such representation was in Brendan's best interests. Moreover, his services were necessitated by the actions of the debtor and his wife and the court believed his services would inure to the benefit of Brendan. Had there been no dispute, no representation would have been necessary. In addition, the California court labelled these fees "additional child support" which clearly indicates its intent to make just such an award. *See Forsdick*, 812 F.2d at 803. Finally, California law imposes the obligation to pay the fees of the guardian ad litem upon the litigating parties. Thus, we believe that Hennenhoeffer's fees were directed to be paid by the parents in recognition of their obligation to provide for the well-being of their child.

Finally, appellant urges that we follow the holding in *In re Lanza*, 100 B.R. 100 (Bankr.M.D.Fla.1989), where the bankruptcy court discharged fees owed by the debtor to the guardian ad litem appointed to represent the child in divorce proceedings. The *Lanza* court endorsed a literal definition of support, holding that attorneys' fees could not be discharged only when those fees were intertwined with the obtaining and enforcement of alimony or support obligations. As the court determined that the attorneys' fees were incurred in connection with a custody dispute rather than for any issues involving financial support of the child, it held that the fees were dischargeable. *Id.*, 100 B.R. at 101.

■ As discussed earlier, such a narrow reading of § 523(a)(5) has been rejected by the majority of courts who have considered this issue. Moreover, a broad reading of the term "in the nature of support" is more in step with the Second Circuit approach to dischargeability pursuant to 11 U.S.C. § 523(a)(5). *See In re Spong*, 661 F.2d at 9 ("An award of attorney's fees may be essential to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law.") Therefore, we de-

---

4. Admittedly the position of the parents in that case was the inverse of the situation here in that it was the debtor who absconded with the child in violation of the court's order and the ex-

penses and attorneys' fees were incurred by the spouse as she attempted to regain lawful custody. However, from the perspective of the child, the distinction is irrelevant.

cline the appellant's invitation to follow *Lanza.*

## CONCLUSION

We find therefore that the fees owed to Hennenhoeffer for his representation of Brendan Peters were in the nature of support as directed by the state court order and thus are nondischargeable debts within the meaning of 11 U.S.C. § 523(a)(5).[5] The decision of the bankruptcy court is affirmed. We observe that the result may be unjust in that the appellant is left with his son's attorney's fees but without his son. But this outcome is dictated by the law and our duty is to so follow.

SO ORDERED.

---

5. As a result, we need not address Peters' argument, relying on *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983), that even if the attorneys' fees were in the nature of support, to determine dischargeability the court must determine what would be the effect on the child's well-being if the court granted the discharge. This view was explicitly rejected in *Forsdick v. Turgeon*, 812 F.2d 801 (2d Cir.1987), where the Second Circuit declined to enter, via the bankruptcy laws, the business of modifying matrimonial decrees established by state courts. *Accord, In re Gianakas*, 917 F.2d 759, 763 (3d Cir.1990); *Sylvester v. Sylvester*, 865 F.2d 1164 (10th Cir.1989); *Draper v. Draper*, 790 F.2d 52, 54 (8th Cir.1986). *In re Calhoun* is distinctly a minority view.