In re Craig Eugene STAGGS, Lori Dawn Staggs, Debtors.

Kay MADDEN, Plaintiff,

v.

Craig Eugene STAGGS, Defendant.

Bankruptcy No. 96–41673.
Adv. No. 96–4155.

United States Bankruptcy Court,
W.D. Missouri.

Dec. 31, 1996.

---

Megan J. Cramer, Kansas City, MO, for plaintiff.

Robert E. Wonder, Kansas City, MO, for debtors, defendant.

## MEMORANDUM ORDER

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the complaint to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(5) that was filed by Kay Madden, who was appointed by the Circuit Court of Jackson County on or about March 30, 1995, as guardian ad litem for the minor child of the debtor, Craig Staggs, and his ex-spouse, Rachel Deann Malloy, during a post-dissolution custody proceeding. Madden requests that the debt in the amount of $2107.00 owed to her by Craig Staggs for guardian ad litem fees be held nondischargeable. For the following reasons, the Court grants the relief requested by Madden in her complaint.

*Facts*

On May 23, 1996, Craig and Lori Staggs filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In their schedules, the Staggs listed an unsecured debt in the amount of $2107.00 that Craig Staggs owes to Kay Madden for legal services rendered as a guardian ad litem for the minor child of Craig Staggs and his ex-spouse, Rachel Malloy, in a post-dissolution custody proceeding. On August 26, 1996, Madden filed a complaint to determine dischargeability of debt requesting that the Court determine that the guardian ad litem fees are a nondischargeable debt under section 523(a)(5) of the Bankruptcy Code.

During a telephone conference between the Court and counsel for Madden and Craig Staggs, the Court agreed to allow the parties to submit the matter to the Court on written briefs in lieu of going to trial. The parties timely filed their memorandum briefs, but failed to submit any documentary evidence from which the Court would be able to make the factual findings for its ruling. However, the Court will take judicial notice of the authenticated Judgment dated November 22, 1995, entered by the Circuit Court of Jackson County, Missouri at Kansas City in Case Number DR90–0192–C (the "Judgment") that was submitted by Rachel Malloy in Adversary Proceeding Number 96–4148 styled *Rachel Deann Malloy v. Craig Eugene Staggs.*[1]

The Court has gleaned the following facts from the Judgment. On August 23, 1994, the state court modified a prior custody order by transferring custody of the minor child of Craig Staggs and Rachel Malloy from Staggs to Malloy. The state court also ordered Craig Staggs to pay child support to Rachel Malloy in the amount of $552.00 per month. On November 15, 1994, Craig Staggs filed a motion to modify the child custody order and the child support order. Craig Staggs made allegations that Rachel Malloy was abusing or neglecting the minor child. On or about March 30, 1995, the state court appointed a

1. The Court may take judicial notice of the contents of its court files. See *In re Nail,* 195 B.R.

922, 924 n. 3 (Bankr.N.D.Ala.1996); Federal Rule of Evidence 201(c).

guardian ad litem for the minor child pursuant to Mo.Rev.Stat. § 452.423.1 (Supp.1996). The state court held a seven-day trial on Craig Staggs' motion to modify the child custody and child support order. Madden appeared on behalf of the minor child at the seven-day trial, she prepared a report for the state court, and at trial she presented evidence to the state court concerning the best interests of the minor child. In the November 22, 1995, Judgment the state court made the following relevant findings and orders:

This Court's jurisdiction to modify the August 23, 1994, custody order is limited by the requisites of § 452.410, R.S.Mo., which requires that the existing custody order can only be modified upon a finding of a change in the circumstances of the child or her custodian which arose after the last order **and** that the modification is necessary to serve the best interests of the child (emphasis in original);

By virtue of the August 23, 1994, judgment which awarded [Rachel Malloy] primary physical custody of the minor child, [Rachel Malloy] has the benefit of the presumption that she remains suitable as custodian for the minor child;

In order to prevail in his Motion to Modify Custody, [Craig Staggs] has the burden of proving by a preponderance of evidence a change of circumstances of the child or the custodial parent that is significant and directly affects the welfare of the child to the extent that a change of custody is necessary for the continued well-being of the child.

. . . .

[Craig Staggs] presented a number of instances of changed circumstances; however, taken singly, none of those alleged changed circumstances is sufficiently significant to require the Court to change custody and, even if the Court were to accept all of such allegations as true, taken cumulatively, the alleged changed circumstances are not of sufficient significance to require a change of custody;

With respect to the specific changed circumstances cited by [Craig Staggs], the Court finds that [Craig Staggs] has failed to establish a change in the home environment of [Rachel Malloy] or that [Rachel Malloy] is not a suitable custodian for the child; [Craig Staggs] has failed to present any credible evidence which would support his allegation that there is violence or chaos in the home of [Rachel Malloy];

Based upon the report of the guardian ad litem and the evidence presented, the Court finds no evidence that [Rachel Malloy] at any time abused or neglected the welfare of the minor child. The incident which formed the basis of said abuse allegation involved the mother tapping the child on the head with a small bread plate during an incident when the child was misbehaving at mealtime, and the Court finds that this so-called "plate episode" was at best an isolated incident, not involving significant violence or significant deprivation of the child in any way, the mother apologized to the child immediately following the episode, and based upon the evidence presented regarding the child's behavior, the Court finds that the mother's response was understandable. Moreover, the Court finds that the "plate episode" is not a significant change of circumstance or any indication of a lack of [Rachel Malloy's] dedication to the best interests of the minor child.

. . . .

[Craig Staggs] alleges as a change of circumstances the fact that the child's grades have fallen, but the neutral testimony of both the child's teacher and principal with respect to the child's performance at school indicate that they view her as a happy, well-adjusted child who is doing very well in school; therefore, the Court finds that this allegation is not such a significant change of circumstances to warrant a modification of custody.

[Craig Staggs] has alleged the child is depressed, but evidence of this is minimal, even if true, and is not such a significant change of circumstances to warrant a modification of custody.

[Craig Staggs'] ruinous obsession to gain possession of the child by treating [her] as though she were only [Craig Staggs'] child and not [Rachel Malloy's] child as well is not in the minor child's best interests;

In making the judgments herein, the Court specifically finds that [Rachel Malloy's] testimony was credible in all important respects and that the child's was of questionable credibility; that [Craig Staggs] has failed in his burden of showing by a preponderance of the evidence any changes in the circumstances of the child or [Rachel Malloy] that are significant or that directly affect the welfare of the child in any significant way; accordingly, [Rachel Malloy's] Motion to Dismiss [Craig Staggs'] Motion to Modify Custody and Child Support should be sustained;

After considering all relevant factors including the incomes and financial resources of the parties and [Rachel Malloy's] financial obligations as custodian of the child, [Craig Staggs] should pay a substantial portion of [Rachel Malloy's] attorney fees. WHEREFORE, IT IS HEREBY ORDERED THAT:

....

2. [Rachel Malloy's] Motion to Dismiss [Craig Staggs'] Motion to Modify Custody and Child Support for failure to meet his burden of proving changed circumstances of such a significant nature as to warrant modification of custody is likewise sustained.

3. [Craig Staggs'] Motion to Modify Custody and Child Support is dismissed with prejudice as to any facts or circumstances occurring before August 10, 1995.

....

5. Kay Madden, guardian ad litem, is awarded her fees in the amount of $5,864.37, which shall be assessed as costs in this action.

6. The costs of this action, including the guardian ad litem fees, are assessed against [Craig Staggs].

In their briefs, both Madden and Craig Staggs agree that Jackson County paid $4608.92 of the guardian ad litem fees pursuant to a state court order, and that Craig Staggs paid $350.00 of the guardian ad litem fees.[2] Gentle readers will note that the

amount that appears to be due Madden after reducing the guardian ad litem fees by the sums paid by Jackson County and Craig Staggs is only $905.45, which is not equivalent to the amount that Madden requests the Court to determine to be nondischargeable. Apparently the parties know something that they have not shared with the Court because Craig Staggs agrees with Madden that the current amount outstanding for the guardian ad litem fees is $2107.00. Because the parties are in agreement on the total amount still due on the debt, the Court will not quarrel with their calculation.

Madden asserts that the debt for the guardian ad litem fees is nondischargeable because the fees are in the nature of support for the minor child of the debtor even though the fees are not owed to the child.

Craig Staggs responds that the guardian ad litem fees should be declared to be dischargeable because (1) the debt is not owed to a "child of the debtor" as required by the plain language of section 523(a)(5); (2) the minor child will not have to pay the guardian ad litem fees if the Court declares them to be dischargeable; (3) the state court assessed the guardian ad litem fees as costs in the state court action, which shows that the award of guardian ad litem fees was not intended to be child support or in the nature of child support; (4) Jackson County agreed to pay what it considered to be reasonable guardian ad litem fees in the amount of $4608.92 and the state court ordered Jackson County to pay only $4608.92, which means that the state court considered the remaining amount due of $2107.00 to be unreasonable guardian ad litem fees and this Court must likewise consider the remaining amount due Madden to be unreasonable; and (5) the award of guardian ad litem fees to Madden unreasonably financially burdens him because of his changed circumstances during the last two years.

## Discussion

■ Section 523(a)(5) of the Bankruptcy Code provides that:

---

2. The Modification of Order signed by Judge Anthony P. Nugent on December 26, 1995, in which Judge Nugent ordered Jackson County to pay $4608.92 of the guardian ad litem fees and

ordered Craig Staggs to pay $2107.00 of the guardian ad litem fees in addition to his deposit of $350.00 was not presented to this Court as evidence in this adversary proceeding.

(a) A discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act [42 U.S.C. § 602(a)(26)], or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5). It is well established that debts in the nature of alimony, maintenance or support are nondischargeable under section 523(a)(5). *See, e.g., In re Kline,* 65 F.3d 749 (8th Cir.1995). The Court must determine whether the award of guardian ad litem fees to Madden in the November 22, 1995, Judgment is in the nature of support within the meaning of section 523(a)(5).

"Whether a particular debt is a support obligation . . . is a question of federal bankruptcy law, not state law." *In re Williams,* 703 F.2d 1055, 1056 (8th Cir.1983). Here, in order to succeed on her dischargeability objection Madden has the burden of proof by a preponderance of the evidence. *See In re Casagrande,* 143 B.R. 893, 896 (Bankr.W.D.Mo.1992) (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

The majority of courts that have addressed this issue have held that a debt for guardian ad litem fees incurred in a custody proceeding and ordered by the state court to be paid by the debtor directly to the guardian ad litem is a nondischargeable support debt un-

der section 523(a)(5). *See, e.g., In re Miller,* 55 F.3d 1487 (10th Cir.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995) (relying on *In re Jones,* 9 F.3d 878 (10th Cir.1993)); *In re Dvorak,* 986 F.2d 940 (5th Cir.1993); *In re O'Toole,* 194 B.R. 629 (Bankr.E.D.Mo.1996); *In re Doe,* 193 B.R. 12 (Bankr.N.D.Cal.1996); *In re Laing,* 187 B.R. 531 (Bankr.W.D.Va.1995); *In re Constantine,* 183 B.R. 335 (Bankr.D.Mass.1995); *In re Lever,* 174 B.R. 936 (Bankr.N.D.Ohio 1991); *In re Stacey,* 164 B.R. 210 (Bankr.D.N.H. 1994); *In re Tremblay,* 162 B.R. 60 (Bankr. D.Me.1993); *In re Glynn,* 138 B.R. 360 (Bankr.D.Conn.1992); *In re Peters,* 133 B.R. 291 (S.D.N.Y.1991), *aff'd,* 964 F.2d 166 (2d Cir.1992) (affirming substantially for the reasons set forth in the district court's opinion); *In re Laney,* 53 B.R. 231 (Bankr.N.D.Tex. 1985).

A minority of courts have ruled that a debt owed by a debtor to a guardian ad litem for fees incurred while representing the minor child of the debtor in a custody dispute is a dischargeable debt for the reason that the guardian ad litem fees could not be considered support or in the nature of support because the issues raised in the custody dispute did not involve support or maintenance for the child, and the fees were not incurred in connection with the collection of child support. *See, e.g., In re Daulton,* 139 B.R. 708 (Bankr.C.D.Ill.1992); *In re Lanza,* 100 B.R. 100 (Bankr.M.D.Fla.1989).

This Court is more persuaded by the rationale of the majority view. The Fifth Circuit ruled in *Dvorak* that guardian ad litem fees incurred in a child custody hearing were to be considered child support and therefore nondischargeable under section 523(a)(5) because the guardian ad litem supplied services during the child custody hearing that were clearly for the minor child's benefit and support as the purpose of the hearing was to determine who could provide the best home for her. *Dvorak,* 986 F.2d at 941.

In *Peters,* when ruling that fees incurred by a guardian ad litem acting on behalf of a child during a custody dispute are in the nature of support, the district court observed that it is "generally accepted that [guardian

ad litem] fees incurred on behalf of a child are nondischargeable because they are deemed to be support when those fees are inextricably intertwined with proceedings affecting the welfare of a child." *Peters,* 133 B.R. at 295. The district court continued:

> The reasons for this view are clear. The support of a child does not just rest upon daily sustenance. The protection of the child's interests in court by the guardian ad litem constitutes a measure of support for the child whose value to the child cannot be diminished. Indeed, it is in the child's best interests to have custody matters fully and fairly litigated. Insuring this is done is part of the parents' duty to support the child.

*Id.* at 296.

The bankruptcy court in *Laing* determined that the fees owed by the debtor to a guardian ad litem who had represented the minor children of the debtor in a custody proceeding and the fees owed by the debtor to a psychologist for testing, evaluation, and treatment of the children were nondischargeable support because it was "clear from the record of the case that the sole focus of the proceedings and the sole focus of the court in rendering decisions was the issue of custody and what would be in the best interests of the children." *Laing,* 187 B.R. at 532. The bankruptcy court opined:

> [T]his court believes that the debt in this case is a debt owed to the child[ren]. The expenses were incurred solely for the benefit of the child[ren].... The [state] court's sole focus was on the best interest of the children. Necessarily, the court determined that the parents who were engaging in the custody battle owed a duty to their children to provide psychological testing and protection during the course of the parents litigation as to custody of the children. This court holds that in proceedings involving custody of children, the court ordered fees for services of a guardian ad litem and for psychologists retained for psychological testing, evaluation, and treatment are debts of the parents to their children for purposes of discharge under 11 U.S.C. § 523(a)(5) unless there is a clear finding of fact and ruling of law in the state court proceedings to the contrary.

*Id.* at 533.

In *O'Toole* the Honorable James J. Barta ruled that the services of the guardian ad litem (the "GAL") in investigating allegations of possible parental abuse during a post-divorce custody proceeding were services provided to the child for the child's benefit and support, therefore, the fees owed by the debtor to the guardian ad litem were nondischargeable support. *O'Toole,* 194 B.R. at 630–31. Judge Barta opined:

> The Plaintiff was appointed GAL for the Debtor's minor child by the state court, pursuant to a request by the Debtor. The state court matter was a domestic proceeding concerning the care and custody of the child. The role of the GAL was to represent the interests of the child in this matter by investigating the Debtor's allegations concerning possible abuse by the child's father.
>
> . . . .
>
> The question of whether or not GAL fees are presumed to be in the nature of support has not been directly addressed by the Eighth Circuit. The Tenth Circuit has twice looked at this issue and has held that court ordered attorney's fees arising from post-divorce custody actions are deemed in the nature of support under Section 523(a)(5) as being incurred on behalf of the child, and that the debts were therefore non-dischargeable. *See Miller,* 55 F.3d at 1489; *Jones v. Jones,* 9 F.3d 878, 881–82 (10th Cir.1993). Similarly, the Fifth Circuit has held that GAL services pursuant to a custody hearing were supplied to the child for the child's benefit and support. Thus, the Fifth Circuit ruled that the portion of the GAL fee that the debtor had been ordered to pay was non-dischargeable under Section 523(a)(5). *See Matter of Dvorak,* 986 F.2d 940, 941 (5th Cir.1993). It is generally accepted that fees incurred on behalf of a child, during proceedings that affect the welfare of that child, are deemed to be in the nature of support. *In re Peters,* 133 B.R. 291, 295 (S.D.N.Y. 1991).

In the matter being considered here, the Court finds that the services of the GAL in investigating allegations of possible parental abuse are, in fact, services provided to the child for the child's benefit and support, and are therefore not dischargeable under Section 523(a)(5).

*Id.* at 630.

Although the Court agrees with the position taken by the majority of courts that have addressed this issue and which have held that guardian ad litem fees incurred in a custody proceeding are nondischargeable under section 523(a)(5) as a support debt, this Court also believes that in making a decision of whether or not the fees incurred by the guardian ad litem in a post-dissolution custody proceeding are nondischargeable in the Eighth Circuit, a lower court must give consideration to the Eighth Circuit's ruling in *Adams v. Zentz,* 963 F.2d 197 (8th Cir.1992). *Adams v. Zentz* did not involve fees that were incurred by a guardian ad litem, however, that case does set forth relevant, general principles that are applicable to an award of fees in a post-dissolution custody proceeding.

In *Adams v. Zentz,* pursuant to the Missouri divorce decree the mother was given general custody of the minor daughter. The father was granted visitation and temporary custody on specific days of the year and ordered to make child support payments. Subsequently, the father filed a motion to modify the divorce decree and, at about the same time, the mother began to frustrate the father's exercise of his visitation and custody rights. The mother's interference with the father's visitation and custody continued on for three years until the father's motion to modify the divorce decree was granted. The Missouri state court modified the divorce decree to temporarily shift the primary physical custody of the daughter to the father, granted the mother temporary custody and visitation rights, and released the father from the obligation to make child support payments while he had primary custody of the daughter. Eight months later the state court returned primary physical custody of the daughter to the mother, increased the father's child support obligations, and ordered the mother to pay the father $7500 for attorney's fees. The mother voluntarily filed a petition under Chapter 7 of the Bankruptcy Code.

The father filed a complaint alleging, in relevant part, that the debt to him for attorney's fees was nondischargeable under 11 U.S.C. § 523(a)(5) as a debt in the nature of support. The bankruptcy court ruled that the debt was dischargeable and the district court reversed. The Eighth Circuit reversed the district court quoting from the bankruptcy court's Order Denying Motion for New Trial or to Amend Judgment:

> The fees incurred herein were not related to the financial "support" of the child. The fees were not really related to a custody battle which might have had some tangential relationship to the child's health and welfare and could thus perhaps then be characterized "support." Instead, the fees were a repercussion of Mr. Adams [sic] desire to enforce his rights against Ms. Zentz. The Court awarded attorney's fees do not seem to be child support payments within the meaning of § 523(a)(5).

*Adams v. Zentz,* 963 F.2d at 199. The Eighth Circuit opined that "[i]n deciding whether to characterize an award as maintenance or support 'the crucial issue is the function the award was intended to serve.'" *Id.* at 200. The Eighth Circuit stated:

> In this case, the bankruptcy court did not clearly err in finding that Zentz's debt to Adams is not in the nature of support. At no point did it find that either parent posed a threat to Terri Lynn's health or welfare, and in fact, it expressly noted that both parties "are fit and adequate parents." ... Moreover, in modifying Adams's and Zentz's divorce decree, the Missouri trial court made numerous findings to the effect that Zentz sought to frustrate Adams's custody and visitation rights and that she had succeeded in doing so. Furthermore, in concluding that a change of primary custody was warranted, the court continued to focus, not upon how Terri Lynn's welfare was threatened by her loss of contact with her natural father, but rather upon how Zentz's conduct had

impaired Adams's ability to maintain a relationship with his daughter.

*Id.*

In *Adams v. Zentz* the Eighth Circuit rejected the notion that attorney's fees awarded in a child custody proceeding are ipso facto in the nature of support. The Eighth Circuit requires the bankruptcy court to examine the purpose behind the fees award. "[R]egardless of how the obligation came into existence, in each case the bankruptcy court still ha[s] to determine the 'function the award was intended to serve.'" *Adams v. Zentz,* 963 F.2d at 200 n. 6 (quoting *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1057 (8th Cir.1983)). This Court believes that the Eighth Circuit's mandate in *Adams v. Zentz* regarding an award of attorney's fees in a post-dissolution custody proceeding is relevant to an award of fees to a guardian ad litem in a post-dissolution custody proceeding. The question to be answered is whether the award of guardian ad litem fees was intended to serve as support for the minor child of the debtor. In making this determination it is helpful to examine the character and substance of the guardian ad litem's responsibilities as set forth in the relevant Missouri statutes and case law.

Section 452.423 of the Missouri Revised Statutes provides for the appointment of a guardian ad litem in domestic situations involving child custody disputes. Section 452.423 states:

1. In all custody proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem. The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.

2. The guardian ad litem shall:

(1) Be the legal representative of the child at the hearing, and may examine, cross-examine, subpoena witnesses and offer testimony;

(2) Prior to the hearing, conduct all necessary interviews with persons having contact with or knowledge of the child in order to ascertain the child's wishes, feelings, attachments and attitudes. If appropriate, the child should be interviewed;

(3) Request the juvenile officer to cause a petition to be filed in the juvenile division of the circuit court if the guardian ad litem believes the child alleged to be abused or neglected is in danger.

3. The appointing judge shall require the guardian ad litem to faithfully discharge his duties, and upon failure to do so shall discharge him and appoint another. The judge in making appointments pursuant to this section shall give preference to persons who served as guardian ad litem for the child in the earlier proceeding, unless there is a reason on the record for not giving such preference.

4. The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings, or may tax such fees as costs to be paid by the party against whom costs are taxed, or from public funds. Such an award of guardian fees shall constitute a final judgment in favor of the guardian ad litem. Such final judgment shall be enforceable against the parties in accordance with chapter 513, RSMo.

5. The court may designate volunteer advocates, who may or may not be attorneys licensed to practice law, to assist in the performance of the guardian ad litem duties for the court. The volunteer advocate shall be provided with all reports relevant to the case made to or by any agency or person and shall have access to all records of such agencies or persons relating to the child or his family members. Any such designated person shall receive no compensation from public funds. This shall not preclude reimbursement for reasonable expenses.

Mo.Rev.Stat. § 452.423 (Supp.1996).

"[T]he guardian ad litem [is] an agent of the court to assist in providing requisite information bearing on the best interests of the child untainted by the parochial interests of the parents." *In re Marriage*

*of Patroske,* 888 S.W.2d 374, 385 (Mo.App. 1994). "[I]t is imperative that a guardian ad litem investigate and have input on the issue of the child's best interests, a role which involves more than perfunctory and shadowy duties, but requires the guardian ad litem to stand in the shoes of the child." *Id.* at 384. The appointment of a guardian ad litem "is for the benefit of the child." *State ex rel. Scott v. Goeke,* 864 S.W.2d 411, 415 (Mo.App. 1993). In cases in which child abuse or neglect is alleged the best interests of the child are always paramount, and it is the duty of the guardian ad litem to protect those interests. *Wilkinson v. DeClue,* 890 S.W.2d 774, 776 (Mo.App.1995).

The facts of this case show that the state court appointed Madden as guardian ad litem after Craig Staggs made allegations that the minor child was being abused or neglected by Rachel Malloy, Madden appeared on behalf of the minor child at the seven-day trial on Craig Staggs' motion to modify custody and child support, Madden prepared a report for the state court, at trial Madden presented evidence to the state court concerning the best interests of the minor child, and the state court's rulings were focused on the health and welfare of the minor child. Madden stood "in the shoes" of the minor child and fulfilled her duty to protect the minor child's best interests in the post-dissolution custody proceeding. Madden acted as an advocate for the minor child and as an advisor to the state court to assist the state court in determining the best interests of the minor child. The Court determines that the services provided by Madden on behalf of the minor child were for the child's benefit and support and that the guardian ad litem fees incurred in the post-dissolution custody proceeding are in the nature of support and, therefore, nondischargeable under 11 U.S.C. § 523(a)(5).

■ The Court rejects Craig Staggs' argument that the guardian ad litem fees should be declared dischargeable because the fees are owed directly to Madden instead of to the minor child. In *In re Kline,* 65 F.3d 749, 751 (8th Cir.1995), the Eighth Circuit ruled that fees in the nature of maintenance or support for a former spouse or child of the

debtor can be nondischargeable under section 523(a)(5) even though the fees are to be paid directly to the attorney for the nondebtor party. The Eighth Circuit reasoned that exceptions to discharge for alimony, maintenance and support deserve a liberal construction even though the statutory exceptions to discharge are usually construed narrowly. *Id.* at 751. The reasoning in *Kline* is equally applicable to an award of guardian ad litem fees to a third party. "Although the monies are not paid to the child, they are paid to a third party strictly for the benefit of the child. It is the type of moral and legal obligation parents would normally provide their offspring." *Stacey,* 164 B.R. at 212. *See also Tremblay,* 162 B.R. at 62 (if obligation is in nature of support, guardian ad litem fees may be paid to a third party on behalf of the child); *Glynn,* 138 B.R. at 362 (same); *Laney,* 53 B.R. at 233 (the guardian ad litem's services inured to the benefit of the children, the fees can only be described as expenses incurred in support of the children, and that the obligation is not payable directly to the children should not serve to preclude the guardian ad litem from collecting compensation for her services). The fact that the minor child would not be responsible for paying the guardian ad litem fees in the event the Court declared the fees to be dischargeable does not change the character of the fees. Madden incurred the fees on behalf of and for the benefit and support of the minor child and, as such, the fees are in the nature of support.

■ Craig Staggs' argument that the guardian ad litem fees cannot be considered in the nature of support because the state court assessed the fees as costs of the action likewise must fail. The determination of whether a particular debt is a support obligation for purposes of determining dischargeability is a function of federal bankruptcy law and not state law. *Laney,* 53 B.R. at 235. This Court is not bound by the label that the state court attached to the award. The services rendered by Madden in the custody proceeding were so inextricably intertwined with the health and welfare of the minor child during the litigation that it would be unreasonable to characterize the

722

fee award as anything other than an obligation in the nature of support, notwithstanding language to the contrary in the state court order. *See Id.*

Craig Staggs argues that the guardian ad litem fees should be declared to be dischargeable because Jackson County agreed to pay what it considered to be reasonable guardian ad litem fees in the amount of $4608.92 and the state court ordered Jackson County to pay only $4608.92, which means that the state court considered the remaining amount due of $2107.00 to be unreasonable guardian ad litem fees and this Court must likewise find the remaining amount due Madden to be unreasonable. The Court rejects Craig Staggs' argument. Pursuant to section 452.423.4 of the Missouri Revised Statutes, the guardian ad litem "shall be awarded a reasonable fee ... to be set by the court." The Missouri state trial court is considered to be an expert on the award of guardian ad litem fees. *Lindell v. Coen,* 896 S.W.2d 525, 529 (Mo.App.1995). Here, the state court awarded Madden her fees in the amount of $5864.37. The state court was required to award a reasonable fee pursuant to section 452.423.4 and apparently believed that the amount of $5864.37 was a reasonable sum for guardian ad litem fees at the time the award was made. Just because Jackson County agreed to pay a sum less than $5864.37 does not make the remaining amount of the state court's award of guardian ad litem fees unreasonable. It was the state court's province to establish a reasonable fee award and not Jackson County. There is no evidence before the Court that the state court modified its prior order to reduce the sum originally awarded to Madden based upon unreasonableness of the previous award. It appears that the state court modified its prior order only to require that Jackson County pay part of the fees and to require that Craig Staggs pay a portion of the fees. In the November 22, 1995, Judgment the state court determined that the sum of $5864.37 was a reasonable guardian ad litem fee, the state court is considered an expert on guardian ad litem fees, and this Court determines that the entire amount is nondischargeable under section 523(a)(5).

Finally, Craig Staggs appears to be attempting to collaterally attack the final judgment of the state court with his argument that the award of guardian ad litem fees unreasonably financially burdens him. In effect, Craig Staggs is requesting that this Court modify the prior state court award because of his changed financial circumstances. This Court cannot modify the state court's prior award.

In sum, the Court determines that the guardian ad litem fees incurred by Madden while representing the minor child of the debtor in the post-dissolution custody proceeding are in the nature of support and, therefore, nondischargeable under 11 U.S.C. § 523(a)(5).

*Conclusion*

Based on the above discussion, the relief requested by Kay Madden in her complaint to determine dischargeability of debt under 11 U.S.C. § 523(a)(5) is GRANTED.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

SO ORDERED.