# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-2247

LARRY EDEN,

*Plaintiff-Appellant,*

v.

ROBERT A. CHAPSKI, LTD., and
JEAN EDEN n/k/a JEAN EAKINS,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 C 9033—**James F. Holderman**, *Judge.*

———————

ARGUED OCTOBER 26, 2004—DECIDED APRIL 22, 2005

———————

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* When an Illinois court dissolved
the marriage between Larry Eden and his wife, Jean Eakins,
it ordered Eden to compensate Eakins and her legal coun-
sel, Robert A. Chapski, Ltd. ("Chapski"), for the attorney's
fees she had incurred in the divorce proceeding. The state
court later determined that this debt was not dischargeable
in bankruptcy pursuant to 11 U.S.C. § 523(a)(5) and
therefore survived Eden's Chapter 13 bankruptcy. That

ruling prompted Eden to initiate an adversary proceeding contending that the bankruptcy court had reserved to itself exclusive jurisdiction over the dischargeability of the debt. The bankruptcy court rejected that contention and dismissed Eden's adversary complaint; and the district court affirmed. We likewise affirm.

# I.

The divorce action between Eden and Eakins commenced in 1994, and that action was pending in the Circuit Court of Kane County, Illinois (the "Kane County court," or the "state court") when Eden filed for bankruptcy protection pursuant to Chapter 13 of the U.S. Bankruptcy Code on February 20, 1996. A list of unsecured creditors that Eden filed in the bankruptcy proceeding identified Chapski as the holder of a disputed claim for attorney's fees against Eden's bankruptcy estate. On August 2, 1996, the bankruptcy court confirmed a plan requiring Eden to make monthly payments of $1,088 for a period of 60 months toward the satisfaction of his outstanding debts.

One year later, on August 6, 1997, the Kane County court entered a judgment of dissolution terminating the marriage between Eden and Eakins. Among other provisions, the judgment required Eden to pay attorney's fees of $17,500 to Eakins and Chapski jointly. When Eden appealed that judgment to the Illinois Appellate Court, the Kane County court entered an order directing Eden to compensate Eakins in advance for the additional attorney's fees she would incur in defending the appeal. After Eden failed to comply with this prospective fee order, the Kane County court on December 18, 1997, ordered him to show cause why he should not be held in contempt of court. The court entered a second rule to show cause nine months later, on September 22, 1998, after Eden also failed to pay other amounts due pursuant to the judgment of dissolution. On October 5,

1998, Chapski filed a petition with the Kane County court seeking compensation for the $8,964.24 that Eakins had accrued in the appeal from the judgment of dissolution. Shortly thereafter, the court held Eden in indirect civil contempt for his failure to comply with the prospective fee order.

Eden repaired to bankruptcy court, filing both a motion to enforce the automatic stay as well as a verified complaint for an injunction against Chapski and an emergency motion asking the bankruptcy court to forbid Chapski from making any efforts to enforce the fee orders entered by the state court. Eden's complaint alleged that his wages as an air traffic controller were the only source of income to fund his Chapter 13 plan, and that he could not satisfy his obligations under that plan and pay the attorney's fees awarded by the state court at the same time. Eden also pointed out that if he were jailed pursuant to the Kane County court's contempt finding, he would be unable to continue making the payments required by the Chapter 13 plan. Eden's complaint therefore asked the bankruptcy court to enjoin Chapski from prosecuting the contempt proceedings against Eden; he also asked that in the event the bankruptcy court allowed any portion of Chapski's claim for attorney's fees (pre- or post-petition) and/or determined that the claim was not subject to the automatic stay, Eden be permitted to amend his Chapter 13 plan to incorporate Chapski's claim.

On December 8, 1998, the state court entered an agreed order staying execution of any sentence on the finding of indirect civil contempt pending the bankruptcy court's resolution of Eden's requests for relief (hereinafter, the "agreed order"). Pursuant to that order, Eden was to deposit funds into a trust account in order to comply with the prospective fee order.

On July 29, 1999, Bankruptcy Judge Ginsberg entered a brief order (which we shall refer to as the "July 29 order")

addressing Eden's obligations to Chapski pursuant to the state court's orders. The July 29 order provided as follows: (1) Any allowed pre-petition claim by Chapski against Eden could be paid only pursuant to the confirmed Chapter 13 plan, and any other attempt to collect on that pre-petition debt was subject to the automatic stay; (2) any post-petition debt to Chapski was not dischargeable in Eden's Chapter 13 bankruptcy; (3) any effort to collect on Eden's pre- or post-petition debt to Chapski was subject to 11 U.S.C. § 1306(a) (identifying items that constitute property of the estate), and because Eden's wages were property of the estate, they were subject to the automatic stay unless the court modified the stay on notice and motion; and (4) "this Court will not make a finding that [Eden's pre-petition debt to Chapski] is determined to be non-dischargeable unless Chapski prevails in an adversary proceeding regarding that issue."

In response to the July 29 order, Chapski and Eakins moved in the bankruptcy court to modify the automatic stay, so that they could make efforts to collect on Eden's debt for the attorney's fees. The bankruptcy court did not reach that motion until after Eden had been discharged from bankruptcy on October 25, 2002; in view of the discharge, the court denied the motion as moot. While the bankruptcy remained pending, neither Chapski nor Eakins initiated an adversary proceeding in order to determine whether Eden's pre-petition debt was non-dischargeable in bankruptcy.

On November 26, 2002, one month after Eden was discharged from bankruptcy, Judge Ginsberg entered an order disposing of the adversary proceeding Eden had initiated four years earlier with his complaint for injunctive relief (hereinafter, the "November 26 order"). Pursuant to that complaint, Eden in 1999 had filed a motion seeking a turnover of the funds he had paid into a trust account pursuant to the agreed order in state court. Eden argued that these funds, intended to compensate Eakins for her

fees in the appeal of the dissolution order, were property of the estate and, as such, were subject to the automatic stay. Judge Ginsberg rejected that argument, noting that Eden had presented no evidence that the funds he had tendered pursuant to the agreed order derived from his wages and were necessary to meet his obligations under the Chapter 13 plan. *See In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997) (Chapter 13 plan, on confirmation, returns to control of the debtor property which is not necessary to fulfill his obligations under the plan). The judge therefore denied Eden's turnover motion and dismissed the adversary proceeding. Eden took an appeal to the district court, but Judge Aspen affirmed Judge Ginsberg's decision. *In re Eden*, No. 03 C 116, 2003 WL 21147830 (N.D. Ill. May 14, 2003) ("*Eden I*").

In the course of his November 26 decision, Judge Ginsberg took the opportunity to note that his July 29 order was meant to resolve all of the issues related to the automatic stay that had been properly noticed and presented. November 26 order at 10. He went on to observe that the dischargeability of the attorney's fees owed to Chapski and Eakins was not one of those issues: "[B]ecause Chapski and [Eakins] did not file a complaint to determine the dischargeability of the Debtor's obligations under the Judgment of Dissolution, . . . questions of dischargeability are not before this Court." *Id.* at 11.

On July 9, 2003, the Kane County court conducted a hearing to determine whether Eden's pre-petition debt to Chapski was dischargeable in bankruptcy. Soon after that hearing, the court held that Eden's pre-petition obligation to Chapski for attorney's fees was a debt in the nature of alimony, maintenance, or support, and as such was not dischargeable pursuant to 11 U.S.C. § 523(a)(5). The debt had therefore survived Eden's discharge from Chapter 13 bankruptcy.

The state court litigation as to the non-dischargeability of the attorney's fees prompted Eden to commence an ad-

versary proceeding against Chapski and Eakins in bank-ruptcy court. His amended complaint in that proceeding requested, among other relief, an order staying any further efforts to collect on Eden's debt to Chapski for Eakins' attorney's fees. Eden alleged that pursuant to the bank-ruptcy court's July 29 order, Chapski was to initiate an adversary proceeding if he wanted the pre-petition debt declared non-dischargeable. Because Chapski had never taken that step, Eden asserted that he was absolved of any liability for the pre-petition portion of the debt when he was discharged from bankruptcy in 2002. Chapski and Eakins moved to dismiss the amended complaint, noting among other things that the dischargeability of the pre-petition debt had just been litigated in state court. In reply, Eden acknowledged that the Kane county court (which by this time had ruled) had found the debt to be non-dischargeable, but Eden insisted that Judge Ginsberg's July 29 order had required the parties to resolve that issue in the bankruptcy court and no other forum.

Bankruptcy Judge Barbosa, who had succeeded Judge Ginsberg as the assigned judge, granted the motion to dismiss, rejecting Eden's construction of the July 29 order. Judge Barbosa believed it important to view the July 29 order in context. The July 29 order was entered almost three years after Eden's Chapter 13 plan was confirmed and while the bankruptcy case remained pending. At that point in time, any resolution of Chapski's claim for fees would, as a practical matter, have to have been resolved within the confines of the bankruptcy case given that Eden's wages were being used to fund the Chapter 13 plan and to that extent were property of the bankruptcy estate. Thus, when Judge Ginsberg provided in the July 29 order that Chapski would have to commence an adversary proceeding if he wished to have Eden's debt to him declared non-dischargeable, he was simply recognizing the reality of the pending bankruptcy and the need to protect the property of

the estate. But it was by no means Judge Ginsberg's intent to say that if Chapski did not litigate the dischargeability question in bankruptcy court, the debt would be discharged upon Eden's exit from bankruptcy. Chapski had opted to wait until Eden was discharged from bankruptcy and to raise the issue with the Kane County court, which enjoyed concurrent jurisdiction over questions of dischargeability. In Judge Barbosa's view, nothing in the July 29 order precluded Chapski from following that course of action.

Eden appealed, and the district court affirmed the dismissal. Judge Holderman reasoned that even assuming the bankruptcy court had the power to reserve jurisdiction to itself to assess the dischargeability of a debt, it was unreasonable to construe the July 29 order as divesting the state court of its concurrent jurisdiction to make that determination. The court also rejected Eden's alternative argument that the state court's finding of non-dischargeability was invalid because, according to Eden, the entire divorce trial in state court had taken place in violation of the automatic stay, rendering the judgment that compelled Eden to pay Eakins' attorney's fees invalid. The court was willing to assume that the divorce trial had taken place during the bankruptcy, while the automatic stay was in place. Nonetheless, the state court had found Eden's debt to be non-dischargeable, and the district court concluded that the finding of non-dischargeability exempted the litigation underlying the debt from the automatic stay. *In re Eden*, No. 03 C 9033, 2004 WL 793554 (N.D. Ill. Apr. 13, 2004) ("*Eden II*").

## II.

As the district court did, we begin our analysis by noting the points that are not disputed by the parties. First, there is no dispute that, with certain exceptions not relevant here, state courts have concurrent jurisdiction with the bank-

ruptcy courts to determine whether or not a debt is dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a). *See, e.g., Rein v. Providian Fin. Corp.*, 270 F.3d 895, 904 n.15 (9th Cir. 2001); *Cummings v. Cummings*, 244 F.3d 1263, 1267 (11th Cir. 2001). Second, there is no question that the Illinois court evaluated the dischargeability of Eden's pre-petition obligation to pay Eakins' attorney's fees and decided that because the debt was in the nature of alimony, maintenance, or support the debt was not dischargeable—and not discharged—in Eden's bankruptcy. *See* 11 U.S.C. § 523(a)(5)[1]; *see also, e.g., In re Maddigan*, 312 F.3d 589, 595 (2d Cir. 2002) ("Courts are in general agreement that obligations in the nature of alimony, maintenance and support may include the duty to pay attorneys' fees incurred by the former spouse in connection with a divorce proceeding, the obtaining and enforcement of alimony and/or support awards, or for custody disputes.") (quoting *In re Peters*, 133 B.R. 291, 295 (S.D.N.Y. 1991), *aff'd*, 964 F.2d 166 (2d Cir. 1992) (per curiam)); *In re Rios*, 901 F.2d 71, 72 (7th Cir. 1990) (per curiam) (citing, *inter alia, In re Spong*, 661 F.2d 6 (2d Cir. 1981)). Nor is there any dispute that the bankruptcy court itself never rendered a ruling as to the dischargeability of this pre-petition debt.[2] Finally, no party disputes the proposition that a creditor

---

[1] Section 523(a)(5) provides that a debtor's discharge from bankruptcy does not discharge him from liability on a debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . . ." This court has previously noted that "[t]he unquestionable purpose of § 523(a)(5) is to ensure that spouses, former spouses, and children receive support even though a support provider has declared bankruptcy." *In re Platter*, 140 F.3d 676, 683 (7th Cir. 1998).

[2] Recall that in the July 29 order, Judge Ginsberg held that the post-petition portion of Eden's debt was not dischargeable in bankruptcy.

can wait until after the debtor has been discharged from bankruptcy to litigate the dischargeability of the debt owed to the creditor, as Eakins and Chapski did here. *See Eden II*, 2004 WL 793554, at *4, citing Ginsberg & Martin on Bankruptcy ¶ 11.7[A][2].

Eden's primary argument is that when Judge Ginsberg stated in his July 29, 1999 order that he would not hold Eden's debt to Chapski (and Eakins) non-dischargeable unless and until Chapski prevailed in an adversary proceeding on that question, he was compelling the parties to litigate that question in bankruptcy court and effectively divesting the state courts of their concurrent jurisdiction to determine whether or not the debt was dischargeable (and discharged) in bankruptcy.

Like the courts below, we find that construction of the July 29 order to be implausible. Setting aside the question of whether a bankruptcy court could prospectively deprive state courts of their concurrent jurisdiction to decide dischargeability questions, *cf. Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S. Ct. 1739, 1747 (1970) ("In short, the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts."), nothing in the court's July 29 order suggests an intent by the bankruptcy judge to assert exclusive jurisdiction as to the dischargeability of the fees that Eden had been ordered to pay Eakins and her attorney. The bankruptcy court said only that it would not deem the debt non-dischargeable unless Chapski prevailed in an adversary proceeding. The court's statement is most naturally construed as a signal that *if* Chapski wanted the bankruptcy court to rule on the question, he would have to commence an adversary proceeding; the ball, in other words, was in Chapski's court. There was no mention of the state courts' concurrent jurisdiction on that subject, no language suggesting that Chapski was obligated to raise the issue

with the bankruptcy court, and no signal that whether or not Chapski did so, the state courts were barred from exercising their concurrent jurisdiction to evaluate the dischargeability of the debt.

The order that Judge Ginsberg subsequently entered on November 26, 2002 notes that the July 29 order was meant to resolve all issues that the parties had properly noticed and presented. If the face of the July 29 order itself does not make plain enough that the dischargeability of Eden's pre-petition debt for attorney's fees was *not* one of those issues, the November 26 order eliminates any doubt on that score with its observation that "questions of dischargeability are not before this court." November 26 order at 11. As with the earlier order, the November 26 order in no way suggests that the parties were precluded from raising that subject in state court.

Eden's fall-back argument is that the divorce trial in state court that culminated in the judgment of dissolution and the proviso that Eden pay the attorney's fees took place in violation of the automatic stay, *see* 11 U.S.C. § 362(a), so that the debt to Chapski and Eakins was void from the outset. *See, e.g., Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001) ("Actions taken in violation of an automatic stay ordinarily are void."). But this argument is a non-starter. The Bankruptcy Code expressly exempts from the automatic stay "the commencement or continuation of an action or proceeding for . . . the establishment or modification of an order for alimony, maintenance, or support[.]" 11 U.S.C. § 362(b)(2)(A)(ii). In view of that exemption, the pertinent question here is whether or not the divorce trial, to the extent it took place while the automatic stay was in place, qualified as a proceeding to establish an order for alimony, maintenance, or support. That question can be answered by looking to the judgment of dissolution and the nature of the obligations that it imposed. Among those obligations,

obviously, was the burden placed on Eden to pay Eakins' attorneys fees. The Kane County court ultimately determined that the attorney-fee obligation was a debt in the nature of alimony, maintenance or support, and as such was a non-dischargeable debt pursuant to section 523(a)(5) of the Code. That determination in turn makes clear that the divorce proceeding that resulted in that obligation was, in relevant part, a proceeding to establish an order for alimony, maintenance, or support. As such, it was exempt from the automatic stay. *See, e.g., In re Gianakas*, 917 F.2d 759, 764 (3d Cir. 1990) (once a court finds a debt to be in "the nature of alimony, maintenance or support . . . [i]t follows that the debt was not dischargeable and was unaffected by the automatic stay").[3] Of course, any effort to *enforce* the judgment of dissolution was subject to the automatic stay (unless and until the stay was modified by the bankruptcy court) insofar as Chapski and/or Eakins sought to collect from resources that were property of the bankruptcy estate. § 362(b)(2)(B); *see Heath*, 115 F.3d at 524. But as the lower courts found in ruling against Eden on his motion for turnover of funds, there is no evidence that this is what occurred here. *See Eden I*, 2003 WL 21147830.

## III.

The Kane County court had concurrent jurisdiction to determine whether Eden's debt for attorney's fees was dischargeable, and nothing in the bankruptcy court's July 29 order precluded the state court from exercising its

---

[3] To the extent that Eden would have us consider the validity of other obligations imposed by the judgment of dissolution, or of the overall judgment, we decline the invitation. The only obligation imposed by the judgment of dissolution that Eden contests in this appeal is his obligation to compensate Chapski and Eakins for her attorney's fees.

concurrent jurisdiction. Upon finding that this obligation was in the nature of a debt for alimony, maintenance, or support, the court determined that the debt was not discharged upon Eden's exit from Chapter 13 bankruptcy. That finding in turn indicates that the divorce proceedings underlying that obligation were, in relevant part, exempt from the automatic stay. The debt is therefore valid. The decision of the bankruptcy court to dismiss Eden's adversary complaint, and the district court's decision to affirm that dismissal, are AFFIRMED.

A true Copy:

　　　Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*